756 So.2d 145 (2000)
James Edgar TODD, Appellant,
v.
STATE of Florida, Appellee.
No. 5D98-3455.
District Court of Appeal of Florida, Fifth District.
March 10, 2000.
Rehearing Denied April 25, 2000.
James B. Gibson, Public Defender, and Rosemarie Farrell, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Lori E. Nelson, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, J.
James Edgar Todd ["defendant"] appeals his conviction for second-degree murder. Defendant was convicted after a jury trial for the death of Morgan Perry ["the victim"], who was stabbed in the eye with a pool cue during an altercation which took place at the Cheyenne Saloon on January 10, 1998. The pool cue punctured the bone at the back of the victim's eye and penetrated the victim's brain, resulting in *146 brain death. The victim subsequently died.
The state's case at trial consisted primarily of the testimony of five individuals who had been present at the Cheyenne Saloon during the altercation. These individuals included two bartender-waitresses; two individuals who were unknown to both the victim and the defendant; and one witness who had accompanied the victim to the bar, was acquainted with the defendant, and who had tried to intervene in the conflict between the defendant and the victim. In addition, two law enforcement officers from the Putnam County Sheriff's Office and the Medical Examiner for Putnam County, Dr. Steiner, testified at trial.
Dr. Steiner, a forensic pathologist, conducted an autopsy on the victim on January 13, 1998. Dr. Steiner stated that part of his work includes gathering medical histories and other information regarding the decedents he examines. He testified that the victim's medical records had been delivered with his body. He obtains such records "every time there is medical treatment of anybody" and he would be "remiss" not to get such records. These records included reports beginning with the arrival of rescue personnel and went to "the time of death and following death when organ procurement teams harvested the organs." Dr. Steiner testified that the records showed that the treatment he had received at University Hospital was mostly "supportive." He explained:
[T]he victim came in with severe head injury with only one brain reflex at the time, shortly after he reached Putnam Hospital. And deteriorated to total brain death, verified again and also by Nuclear scan due to penetrating head injury.
Dr. Steiner testified that he had been contacted about harvesting the victim's organs and that he had given his permission for it. He maintained that organ removal was not important to his investigation and that the victim had died of a "penetrating head wound, absolutely."
Dr. Steiner disagreed that he could not have determined the cause of the victim's death without the benefit of having talked to hospital personnel and without having received a copy of the victim's medical records. He explained that his own examination of the body revealed that something had penetrated the victim between his nose and his eye, had gone through the bone at the back of the eye, and had actually penetrated into the brain approximately two and a half inches; a head injury of a kind which people cannot survive.
Dr. Steiner was then asked a hypothetical question regarding the cause of the victim's death:
Q. Assume as a hypothetical that Morgan Perry on the 10th of January of this year was struck on the side of that eye with the thin end of a cue stick.
Assume that Morgan Perry was taken to the Putnam Columbia Medical Center for treatment by rescue.
Assume that Morgan Perry's brain was scanned by Putnam Medical Center, a Nuclear scan.
And assume that the test revealed that no blood was in fact flowing to the brain at the time of the scan.
And assuming that Morgan Perry washad expired on the 12th of January of 1998 after being on life support.
Based upon your receipt of the medical records, the information that you have in hand as well as your own physical review, the autopsy and review of the body, do you have an opinion within a reasonable degree of medical certainty as to the nature and cause of Morgan Perry's death?
A. Yes, I do.
Q. And what is that, sir?
A. Death was a result of a penetrating head injury.
On cross-examination, Dr. Steiner admitted that he had been unable to examine the victim's liver, heart, and lungs.
*147 Defense counsel objected to Dr. Steiner testifying to any information by another doctor concerning the cause of the victim's death. He contended that the underlying facts (such as the cause of death) had to be proven, and only after that had been done could they be used in a hypothetical question. He noted that in this case:
Mr. [sic] Steiner is going to testify to a large degree regarding the cause of Mr. Perry's death based upon what doctors at the University Medical Center told him before he authorized the removal of Mr. Perry's organs.
Mr. Steiner I believe is going to testify that he did not have a heart or lungs or other critical organs to examine to eliminate them as possible causes of death.
And for that reason, I believe that the underlying facts in the form of testimony from Doctors at University or Putnam Community are critical and that they be established through people with first-hand knowledge, rather than through hearsay testimony in the form of Dr. Steiner's testimony.
Defendant mainly contends on appeal that he was entitled to a judgment of acquittal because the State failed to prove that the victim's death was caused by the defendant because the only evidence on this issue was presented through the testimony of Dr. Steiner. Defendant contends that Dr. Steiner's testimony cannot be used to establish the cause of death because the State failed to prove the underlying premises upon which the hypothetical question was based. He contends that "the cause, manner and circumstances surrounding the cessation of cardiopulmonary function of the decedent in the instant case was established only by hearsay evidence" (presumably the records from University Hospital and testimony by Dr. Steiner regarding a conversation he had with hospital personnel).
We find no merit to this argument. It ignores that fact that prior to being asked the hypothetical question, Dr. Steiner had plainly testified that his own examination of the body revealed that the victim had suffered a penetrating injury to the brain, which had resulted in irreversible brain injury and death.
Even if the hypothetical were not proper, it was a harmless error beyond a reasonable doubt in light of Dr. Steiner's other testimony. The remaining errors asserted on appeal were unpreserved and meritless.
AFFIRMED.
W. SHARP, and THOMPSON, JJ., concur.